IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUB-ZERO, INC. and GREAT
NORTHERN INSURANCE COMPANY,

                       Plaintiffs,                    OPINION AND ORDER

   v.

                                                                   09-cv-00497-wmc

GENERAL ELECTRIC COMPANY,

                       Defendant.

---

      In this products liability case, plaintiffs Sub-Zero, Inc. and Great Northern Insurance Company, as subrogee of Sub-Zero, (collectively "Sub-Zero") allege that a metal halide lamp manufactured by defendant General Electric Company ("GE"), ruptured, causing a fire in Sub-Zero's Madison, Wisconsin facility. Sub-Zero pursues its claim under both strict liability and negligence theories. GE moves for summary judgment on two primary grounds: that Sub-Zero cannot prove liability under either theory without an expert witness; and that Sub-Zero is unable to prove causation having previously ignored GE's written warnings and received actual knowledge of the relevant risks. While expert testimony is not required to demonstrate that the product is defectively dangerous, the court grants GE's motion as to Sub-Zero's strict liability claim because Sub-Zero has failed to put forward *any* evidence that the lamp fell below the minimum expectations of the ordinary consumer of metal halide lamps, nor that it used the lamps without knowledge of the attendant risks. The court also grants GE's motion

as to Sub-Zero's negligence claim because expert testimony is required to demonstrate that the lamp was negligently designed.

## UNDISPUTED FACTS[1]

On December 26, 2007, a fire occurred at Sub-Zero's manufacturing facility in Madison, Wisconsin. For the purposes of summary judgment GE does not dispute that its high intensity, 1000-watt halide lamp ruptured, ejected hot particles onto combustible materials and caused the fire. Great Northern Insurance Company paid Sub-Zero $356,163.17 for the damages sustained.

The lamp at issue was a GE MCR1000/U metal halide lamp, which is S-rated. The rating describes whether the lamp can be used in an open or enclosed fixture. S-rated lamps operated in a vertical position can be used in an open fixture, but S-rated lamps burned in any other orientation must be used in "enclosed fixtures only." GE's product catalog provides additional instruction for use of high intensity discharge lamps in open fixtures:

> For lamps operated in the vertical ±15° that are not designated "Enclosed Fixtures Only," lamp may be used in an open or enclosed lighting fixture depending upon the application and operating environment. For example, if the lamp is located near combustible material or in an area which is unoccupied for extended periods, enclosed fixture which can contain fragments of hot quartz or glass is recommended.

(Ex. E to Def.'s Br. (Dkt. #38-6) at 22.)

---

[1] The following facts are derived from the parties' proposed findings of fact and the record viewed in a light most favorable to the plaintiff.

The lamp at issue was manufactured in September 2002. The warning, printed on the exterior sleeve of each individually wrapped lamp at that time, provides:

> **CAUTION:** THE FOLLOWING INSTRUCTIONS MUST BE COMPLIED WITH TO HELP AVOID POSSIBLE SHATTERING AND EARLY FAILURE OF THE LAMP. General Electric Company will not be responsible for poor lamp performance, personal injury or property damage resulting from failure to follow these instructions.
>
> Metal Halide lamps are constructed of an outer bulb with an internal arc tube made of quartz. The arc tube operates under high pressure at very high temperatures - as high as approximately 1100° C. The arc tube and outer bulb may unexpectedly rupture due to internal causes or external factors such as a system failure or misapplication.
>
> - Lamp must only be operated in specified burning position with compatible electrical equipment in the types of fixtures prescribed in the applicable specification bulletin. Fixture lens/diffuser material must be able to contain fragments of hot quartz or glass (up to 1100° C). If in doubt, contact your fixture manufacturer.
> - Electrically insulate any metal to glass support in fixture to avoid decomposition of the glass.
> - Protect lamps from direct contact with liquids (such as rain, sleet or snow) to avoid breakage from thermal shock.
> - In continuously operating systems (24 hours/day, 7days/week), turn lamps off once per week for at least 15 minutes. Failure to comply increases the risk of rupture.
> - Screw lamp firmly but not forcibly into the socket to minimize loosening due to vibration. Do not use excessive force as the glass bulb may break.
> - Do not scratch glass bulb because it may break during installation or later during lamp operation.
> - Turn power off and let lamp cool before removal to avoid potential burn and electric shock hazard during lamp replacement.
> - Relamp fixtures at or before the end of rated life. Beyond rated life, light output diminishes while energy consumption and risk of rupture increase.
>
> **LAMP OPERATING CHARACTERISTICS** - This is a discharge lamp and requires some time to restart and come to full brightness after a power interruption. For total load, add auxiliary watts to lamp watts. In service, color variation from lamp to lamp is an inherent characteristic of metal halide lamps. It is further influenced by variations in operating conditions and is not an indication of system or lamp failure. As lamps age, a gradual shift to a warmer color normally occurs.
>
> **WARNING** - THIS LAMP CAN CAUSE SERIOUS SKIN BURN AND EYE INFLAMMATION FROM SHORTWAVE ULTRAVIOLET RADIATION IF OUTER ENVELOPE OF THE LAMP IS BROKEN OR PUNCTURED AND THE ARC TUBE CONTINUES TO OPERATE. DO NOT USE WHERE PEOPLE WILL REMAIN FOR MORE THAN A FEW MINUTES UNLESS ADEQUATE SHIELDING OR OTHER SAFETY PRECAUTIONS ARE USED. CERTAIN TYPES OF LAMPS THAT WILL AUTOMATICALLY EXTINGUISH WHEN THE OUTER ENVELOPE IS BROKEN OR PUNCTURED ARE COMMERCIALLY AVAILABLE FROM THE GENERAL ELECTRIC COMPANY.
>
> - If outer envelope breaks or is punctured and lamp continues to operate, immediately turn power off and remove lamp after it has cooled.
>
> This lamp certified to comply with FDA radiation performance standards, 21 CFR Subchapter J.
>
> **DATE OF MANUFACTURE KEY:** The month and year of manufacture of this lamp appears as a one-letter, one-number code before the letter G on the lamp base or embossed on the flat area of the glass that seals the lead wires inside the lamp just above the base. The letters A thru M, not including I, represent the months January thru December. The numbers 0 to 9 represent the last digit of the year in 10 year cycles. For example, E4 represents May 1994, L8 represents November 1998, etc.
>
> GE Lighting • General Electric Company • Nela Park • Cleveland, OH 44112

(Ex. D to Def.'s Br. in Support of Summary Judgment (Dkt. #38-5) at 2.)

A few months before the fire at issue in this case, another fire occurred at the Sub-Zero facility. On September 10, 2007, a Sub-Zero supervisor Colin Handley emailed Sub-Zero's Corporate Director of Safety, Glenn Dillard, and others about that fire, explaining:

> At 9:10 pm on Sunday September 9th, 2007 . . . Richard Burbach . . . noticed smoke coming from across the aisle. As

3

> he approached the smoke he could see the plastic on a skid of glass . . . was in flames. He also noticed glass from a broken bulb was on the floor.
>
> . . .
>
> While investigating the cause Rick found the glass from the broken bulb was from a ceiling light fixture. He thinks it was *a filament from the bulb landing on the plastic of the glass skid that caused the fire*. The maintenance crew took down the fixture to have it checked in the maintenance shop.

(Ex. I to Def.'s Br. (Dkt. #38-10) (emphasis added).) The "broken bulb" referenced in the above email was a metal halide lamp.

Sub-Zero and its insurer, Great Northern Insurance Company as subrogee of Sub-Zero, filed this lawsuit on August 12, 2009 alleging that GE is liable for damages sustained by the fire under both strict liability and negligence theories. The court exercises jurisdiction over this case pursuant to 28 U.S.C. § 1332.[2]

In opposition to GE's motion for summary judgment, Sub-Zero relies in part upon the expert report of David Halverson (dkt. ## 43-2, 43-3), which it had timely disclosed, but the scope of Mr. Halverson's expertise and the content of his report is limited to the cause of the fire. He does not offer an opinion on whether the metal halide lamp at issue is defective, nor does he opine as to the adequacy of the warnings. Sub-Zero also

---

[2] Plaintiff Sub-Zero is a corporation organized under the laws of the State of Wisconsin with its principal place of business in Madison, Wisconsin. (Am. Compl. (dkt. #14) ¶ 1.) Plaintiff Great Northern Insurance Company is a corporation organized under the laws of the State of Minnesota, with its principal place of business in Warren, New Jersey. (*Id.* at ¶ 2.) Defendant General Electric Corporation is a corporation organized under the laws of the State of New York, with its principal place of business in Fairfield, Connecticut. (*Id.* at ¶ 3.) The amount in controversy exceeds $75,000. (*Id.* at ¶¶ 4, 24-25.)

submitted a report of James L. Rhiner who would have offered opinions on GE's negligent design and warnings, but because Sub-Zero failed to disclose this expert witness or his report timely, and because this omission was neither substantially justified nor harmless, the court struck Rhiner's expert report and excluded his testimony from trial in a previous order. (Dkt. ## 46, 66.)

OPINION

GE posits two main arguments in support of its summary judgment motion. First, expert testimony is required to prove negligent and strict liability based on alleged defects in the design and manufacture of the complex industrial lamp at issue. Second, Sub-Zero cannot demonstrate that any inadequacy in the warnings caused the damage because (a) no one read the warnings anyway and (b) even after receiving actual notice of the risk as a result of the September 2007 fire, Sub-Zero did not alter its behavior by, for example, replacing all the lamps (known as "relamping") or enclosing the lamps to prevent hot particles from escaping after rupture. GE's proposed grounds for summary judgment go to both theories of liability, but given the different elements of proof, the court evaluates Sub-Zero's respective claims for liability separately.

A.     **Strict Liability**

In order to demonstrate strict liability, Sub-Zero must demonstrate:

> 1) the lamp was in a defective condition when it left the possession or control of the seller;

5

> 2) the lamp was unreasonably dangerous to the user or consumer;
>
> 3) the defect was a cause of Sub-Zero's damages;
>
> 4) the seller was engaged in the business of selling the product; and
>
> 5) the lamp was one that reached the user or consumer without substantial change in the condition in which it was sold.[3]

*Haase v. Badger Mining Corp.*, 2004 WI 97, ¶ 25, 274 Wis. 2d 143, 682 N.W.2d 389; *see also* Restatement (Second) of Torts § 402A.

The first two elements -- the product at issue is defective and unreasonably dangerous -- are usually considered together under the "consumer-contemplation test." "A product is defectively dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it with the ordinary knowledge common to the community as to the product's characteristics." *Sumnicht v. Toyota Motor Sales, U.S.A., Inc.*, 121 Wis. 2d 338, 367, 360 N.W.2d 2, 15 (1984) (internal citation and quotation marks omitted). This test is applied in all strict liability cases, *see Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 34, 245 Wis. 2d 772, 629 N.W.2d 727, and both parties agree that the consumer contemplation test governs Sub-Zero's strict liability claim (*see* Def.'s Opening Br. (dkt. #38) 8; Pls.' Br. (dkt. #43) 5).

A failure to provide adequate warnings may itself constitute a defect, rendering the product unreasonably dangerous. *Michaels v. Mr. Heater, Inc.*, 411 F. Supp. 2d 992, 1004

---

[3] The last two elements of proof are not at issue.

(W.D. Wis. 2006).[4]  "A manufacturer must anticipate the environment i[n] which its product will normally be used and provide a warning that is adequate and appropriate under those circumstances."  *Id.*; *see also Tanner v. Shoupe*, 228 Wis. 2d 357, 367, 596 N.W.2d 805, 812 (Ct. App. 1999).  If the danger is adequately disclosed in a warning (or if it is open and obvious), then the danger does not exceed the expectations of an "ordinary consumer."

### 1. Proof of defect

A determination that a product is defectively dangerous "does not inevitably require any degree of scientific understanding about the product itself."  *Green*, 2001 WI 109, ¶ 42.  In *Green*, the Wisconsin Supreme Court rejected the defendant's argument that the test should not be applied in "complex" cases involving "technical or mechanical matters."  *Id.* at ¶¶ 42-43.  The *Green* Court explained that the test:

> requires understanding of how safely the ordinary consumer would expect the product to serve its intended purpose.  If the product falls below such minimum consumer expectations, the product is unreasonably dangerous.  These standards are straightforward and may be applied even in "complex' cases.

*Id.* at ¶ 42.

Here, Sub-Zero alleges that the lamp at issue is defectively dangerous because the risk of rupture and corresponding risk of fire renders the lamp dangerous beyond the

---

[4] Under a failure to warn theory -- regardless of whether brought within a strict liability claim or a negligence claim -- the plaintiff must demonstrate that the defendant had a duty to warn and the danger was reasonably foreseeable.  *See, e.g., Mohr v. St. Paul Fire & Marine Ins. Co*, 2004 WI App 5, ¶ 32 n.10, 269 Wis. 2d 302, 674 N.W.2d 576); *Tanner v. Shoupe*, 228 Wis. 2d 357, 365 n.3, 596 N.W.2d 805, 811 n.3 (Ct. App. 1999).

extent expected by the ordinary consumer, and that the warnings are not adequate and appropriate in disclosing the risk. In evaluating whether the risk of rupture exceeds the ordinary consumer's expectations, the jury need not consider the internal workings of the lamp; rather, Sub-Zero's allegations concern whether the lamp was dangerously defective in not being enclosed in a fixture or its approved use limited to such an enclosed fixture.

This factual determination falls within "the realm of ordinary experience" and does not require expert testimony. *See Racine County v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶ 28, 323 Wis. 2d 682, 781 N.W.2d 88 (reinforcing the limited requirements for expert testimony under Wisconsin law). Nor is expert testimony required for a jury to assess whether the warning accompanying the lamp was "adequate and appropriate." The alleged defects and the warnings concerning these defects are "reasonably comprehensible to the jury," and therefore the "extraordinary" requirement of expert testimony is not necessary here. *City of Cedarburg Light & Water Comm'n v. Allis-Chalmers Mfg. Co.*, 33 Wis. 2d 560, 567, 148 N.W.2d 13, 16 (1967).

Evidence of the malfunction itself may also be probative of whether the lamp is defectively dangerous. As the Wisconsin Supreme Court in *Sumnicht* explained:

> In addition to expert testimony, the presence of a product's defective design that is unreasonably dangerous can be established by the presentation of circumstantial evidence. Evidence of malfunction is one type of circumstantial evidence that can be used in establishing a defective condition.

121 Wis. 2d at 373 (internal citation and quotation marks omitted).

GE argues that expert testimony is also required here because "the ordinary knowledge common to the [commercial and industrial] community" as to the

8

"characteristics" of a high intensity, 1000 halide lamp, is *not* knowledge "within the common understanding of the typical juror." (Def.'s Reply Br. (dkt. #48) 2-3 (quoting *Green*, 245 Wis. 2d 797)(bracketed words added).) There is certainly merit to GE's argument. There are obvious, important differences between the industrial-grade lamp at issue and a household incandescent bulb, but the lamp is still used to light a commercial or manufacturing facility, not serve some unique purpose outside the common understanding of the jury.

This does not, however, save Sub-Zero's strict liability claim. The Court of Appeals for the Seventh Circuit has described summary judgment as the "put up or shut up" phase of the lawsuit. *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 606, 612-13 (7th Cir. 2008) ("As we have often observed, summary judgment is the 'put up or shut up' moment in the life of a case."). To survive summary judgment Sub-Zero must show through specific evidence that a triable issue of fact remains. *Id.*

Determining whether a product is "unreasonably dangerous" is an objective test, which is not contingent upon the actual knowledge of the injured consumer. *Sumnicht*, 121 Wis. 2d at 370. Having lost its opportunity to present expert opinion on this point, Sub-Zero needed to come forward with *some* evidence of the knowledge of risk attributable to a typical consumer of commercial or industrial lamps of the type at issue here. For example, Sub-Zero might have offered lay opinion testimony as to the knowledge of the ordinary consumer of this type of product, assuming it was based on personal knowledge and subject to the limitations of Federal Rule of Evidence 701, or admissible documentary evidence of the ordinary knowledge of the relevant community

as to this product's risks. But Sub-Zero offers nothing. As such, Sub-Zero has not met its burden to show that the lamp at issue was defectively dangerous under a strict liability theory of relief. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (because plaintiff has burden of proof at trial, plaintiff has burden at summary judgment to make sufficient showing of evidence for each essential element of his case).

### 2. Causation

In addition to proving that the lamp is dangerously defective, Sub-Zero must also demonstrate that the defect was a cause of its damages -- the third element of a strict liability claim. As with proof of defect, Sub-Zero simply stands on it pleadings and fails to offer any evidence that the alleged defect caused Sub-Zero's injury. In fact, plaintiffs inexplicably chose to completely ignore GE's causation arguments.

The causation element serves an important role in keeping strict liability under Wisconsin law from becoming "absolute liability." *See Michaels*, 411 F. Supp. 2d at 1003 (citing *Fuchsgruber v. Custom Accessories, Inc.*, 2001 WI 81, ¶ 18, 244 Wis. 2d 758, 628 N.W.2d 833). "The idea behind the consumer contemplation test is that consumers who had their eyes open when they chose to use a potentially dangerous product cannot later blame the manufacturer for their foreseeable injuries." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 600 (7th Cir. 2000).

GE argues that Sub-Zero cannot demonstrate that the failure to adequately warn caused the injury at issue. GE posits two bases for finding a lack of evidence to demonstrate causation: (1) since Sub-Zero cannot prove that anyone read the warning, any inadequacy in the warning cannot be the cause of the fire; and (2) since Sub-Zero

10

failed to act after a September 2007 fire its own employee believed was caused by the rupture of a similar lamp, a lack of actual notice of the risks of rupture cannot be the cause legally. Sub-Zero effectively concedes the validity of both arguments by failing to offer any evidence of causation.

Again, there may well be responses to these arguments. Sub-Zero may have argued that having invested heavily in GE's lamps, without knowledge of the risks, it chose to keep them, rather than incur the further expense of a complete and regular relamping or of enclosing every lamp. Or that due to GE's failure of prominent, clear warnings and lack of appreciation of risk even after the fire, Sub-Zero reasonably proceeded unaware. But whether because none of this is true, or because of lack of diligence, Sub-Zero chose not to present any response. And this court cannot, and will not, do so for it. Accordingly, GE is also entitled to summary judgment on the basis that Sub-Zero cannot demonstrate causation.[5]

B.  Negligence

Under Wisconsin law of products liability, there may be recovery for the negligent design of a product, even though the product is not unreasonably dangerous. *Insolia*, 216

---

[5] In its opening brief in support of summary judgment, GE also argued that the warnings were adequate as a matter of law. (Def.'s Opening Br. (dkt. #38) 5 (citing *Kurer v. Parke, Davis & Co.*, 272 Wis. 2d 390, 409 (Ct. App. 2004)).) GE seemingly abandons this argument in its reply, focusing instead on causation. (Def.'s Reply (dkt. #48) 5.) Regardless, the question of whether the warning is adequate is a question for the jury. *Michaels*, 411 F. Supp. 2d at 1004 (citing *Schuh v. Fox River Tractor Co.*, 63 Wis. 2d 728, 739, 218 N.W.2d 279, 285 (1974)). Fact issues remain as to whether the warning adequately disclosed (1) the danger associated with not enclosing the lamp, (2) the likelihood of a rupture, and (3) the risks of rupture.

F.3d at 605. A negligence claim concerns whether the defendant could have come up with a less dangerous design, an issue immaterial under a strict liability theory. *Komanekin v. Inland Truck Parts*, 819 F. Supp. 802 (E.D. Wis. 1993). In order to demonstrate a negligent design, Sub-Zero must demonstrate:

> 1) a duty of care on the part of GE;
>
> 2) a breach of that duty;
>
> 3) a causal connection between the conduct and the injury; and
>
> 4) an actual loss or damage as a result of the injury.

*Green*, 2001 WI 109 ¶ 55.

Sub-Zero's claim based on negligent design cannot survive absent expert testimony on the first two elements -- what is the nature of the duty of care and did GE breach that duty? In particular, Sub-Zero would at minimum have to establish that GE breached its duty in designing the S-rated model, which requires an understanding of the industry safety standards governing metal halide lamps and the relative safety of other models. Moreover, to the extent Sub-Zero's allegations of design defect concern the inner-workings of the lamp -- and not just the lack of enclosure -- the subject is of such complexity as to require expert testimony. *Cedarburg Light &Water*, 33 Wis. 2d at 567 ("Whenever the question of negligence rests on facts or principles which would be extremely difficult for a conscientious juror to comprehend, the trial court may decline, upon motion, to permit the case to go to the jury in the absence of expert testimony on the negligence issue."). Since the court struck as untimely Sub-Zero's only proffered

expert opining on these very issues, the court grants GE's summary judgment motion as to the negligence claim.[6]

ORDER

IT IS ORDERED that:

1) defendant General Electric Company's motion for summary judgment (dkt. #37) is GRANTED; and

2) the clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 10th day of September, 2010.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

---

[6] A permissible inference of negligence under the doctrine of res ipsa loquitur may apply to the facts at issue here. *See generally Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 33-24, 241 Wis. 2d 804, 623 N.W.2d 751. But Sub-Zero makes no such argument, and the court declines to develop such an argument for plaintiffs.